**STATE of Maine**

v.

**Linda RUPRECHT.**

Supreme Judicial Court of Maine.

Argued March 23, 1983.

Decided April 8, 1983.

1. 12 M.R.S.A. § 7406(2) provides:
   2. *Hunting without license on person.* A person is guilty of hunting without a license on his person if he:
   A. Fails to keep his written hunting license on his person while hunting or transporting animals or birds; or

Janet T. Mills, Dist. Atty., Mary M.L.H. Flint, Asst. Dist. Atty. (orally), Farmington, for plaintiff.

Holman's Law Offices, Joseph F. Holman (orally), Farmington, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

The defendant, Linda Ruprecht, appeals from a Class E conviction for hunting without a license on her person in violation of 12 M.R.S.A. § 7406(2) (1983).[1] Judgment was entered in the Superior Court (Franklin County) following a jury-waived trial. The sole issue on appeal relates to the sufficiency of the evidence to support the conviction.[2] We deny the appeal and affirm the judgment.

Defendant was charged by a complaint filed in District Court, which alleged that on October 17, 1981, in Seven Ponds Township, Franklin County, the defendant did:

fail to keep her written hunting license on her person while hunting, or did fail to exhibit her hunting license to Michael Pratt, a game warden with the Department of Inland Fisheries & Wildlife, upon request.

Following arraignment, the case was transferred to the Superior Court for trial. The presiding justice found the defendant "guilty as charged" and imposed a fine of $50.00.

The evidence consisted of the testimony of a game warden as the sole witness for the prosecution, the defendant and three persons who were accompanying her at the time of the alleged offense. The game warden testified that on October 17, 1981,

B. Fails to exhibit his license to any warden, employee of the department, guide or landowner, upon request.

2. In her brief defendant raised two issues in addition to the claimed insufficiency of the evidence. Those issues were not raised in the Superior Court nor preserved for appellate review.

during the partridge season, he had been patrolling a dirt road in Seven Ponds Township when he spotted a vehicle, a Land Rover, proceeding down the road toward him at approximately 15–20 m.p.h. He testified that it is customary to hunt partridge by driving slowly along dirt roads until a bird is spotted and then to step from the vehicle and shoot.

The warden stopped the Land Rover and asked the passengers whether they had had any luck hunting. They replied affirmatively, and the warden observed approximately six birds on the floor of the front seat. He then asked to see their hunting licenses. All of the occupants of the vehicle satisfied him as to their licenses except for the defendant. Upon being asked for her license, the defendant stated she was not hunting. Since she was holding a shotgun, the warden asked her to step from the vehicle. The defendant stepped from the right rear seat of the Land Rover and when asked if she had any shells, she produced two shells from her pocket that fit the .410 gauge shotgun she was holding. The warden testified that although the defendant stated she was holding the gun for her husband who was also seated in the rear seat, he was skeptical because her husband was holding his own .20 gauge gun.

As the warden went to his vehicle to write the defendant a summons, he was approached by the driver of the Land Rover, who told him that the defendant had been holding the .410 for him. The warden asked the driver and the defendant whether they would think him unreasonable if he did not believe them, and they said "no".

The defense consisted of the testimony of the defendant and three other adult occupants of the Land Rover. Each testified that the defendant had not been hunting on the day in question. Allegedly, she was holding the shotgun for the driver while he used a different shotgun to teach his ten year old daughter (seated in the middle of the front seat) how to shoot. The explanation was offered that the shotgun was given to the defendant because of a lack of room in the front seat, and she was holding the shells so that they would not become mixed with shells being used by the driver's daughter.

■ Defendant argues on appeal that the evidence, when viewed in the light most favorable to the State, is nevertheless insufficient to convince any rational trier of fact beyond a reasonable doubt that the defendant was hunting. Defendant emphasizes that the warden admitted that he could not observe the behavior of the passengers prior to stopping the vehicle, and admitted further that he did not observe the defendant outside the vehicle at any time before the stop was made. The defendant relies upon this Court's definition of "hunting" to mean, "the act of searching, pursuing or chasing game." *State v. Hillock*, 384 A.2d 437, 440 (Me.1978). She reasons that since the warden did not observe her to search, pursue or chase game, the evidence is insufficient.

■ Defendant overlooks or chooses to ignore the fact that circumstantial evidence of an element of an offense may serve as the basis for proof of that element beyond a reasonable doubt. *State v. McEachern*, 431 A.2d 39, 42 (Me.1981); *State v. Bushey*, 425 A.2d 1343, 1345 (Me.1981). The circumstantial evidence in this case while not overwhelming, is clearly sufficient to permit the factfinder to rationally conclude that the defendant had been hunting. Notwithstanding the cogent testimony of the defense witnesses, the weight of the evidence and the determination of witness credibility are factors within the exclusive province of the trier of fact. *State v. Doughty*, 399 A.2d 1319, 1326 (Me.1979).

The entry must be:

Judgment of conviction affirmed.

All concurring.